## UNITED STATES v. RASKIN.
### Criminal Action No. 39320.

District Court, E. D. New York.
Nov. 3, 1943.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N.Y. (Maurice Z. Bungard, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for plaintiff.

Henry G. Singer, of Brooklyn, N.Y., for defendant.

BYERS, District Judge.

The defendant has demurred to the indictment herein containing eleven counts, the odd numbered ones charging that on certain dates during the year 1943 he did "then and there unlawfully, knowingly, fraudulently and feloniously keep in his possession with intent to utter or publish as true" a given number of "certain falsely made, forged and counterfeited gasoline ration coupons being writings of the United States, to wit: * * * gasoline ration coupons of the 'T' Unit, each of said coupons purporting to be issued by the Office of Price Administration, which is an agency authorized and acting under the laws of the United States, the said gasoline ration coupons, 'T' Unit, being in the resemblance and similitude to true and genuine gasoline ration coupons of the United States, to wit: Office of Price Administration gasoline ration coupons of the 'T' Unit, issued by the said Office of Price Administration of the United States and one of which * * * was and is of the following tenor and effect, that is to say:

" 'Permits Delivery
of
One T Unit
of Gasoline
This Coupon Detached
at Time of Sale
Office of Price Adm.'

* * * and the said defendant then and there well knowing the same to be falsely made, forged and counterfeited and intending then and there and thereby to defraud the United States; against the peace and dignity of the United States and contrary to the form of the statute in such case made and provided. (Title 18, United States Code, Section 72)."

The even numbered counts allege the passing of the said several groups of coupons on the various dates involved, upon the Shell Oil Company.

The indictment refers to six occasions between March 26, 1943, and April 10, 1943, when the defendant is said to have possessed varying numbers of these counterfeit coupons, 262 in all, and his passing of them on five occasions upon the Shell Oil Company which was his source of gasoline supply.

The challenge of the demurrer presents two contentions:

A. That the gasoline ration coupons are not public records or writings within the purview of the statute.

B. That the United States was not defrauded by the possession or the passing.

█ It appears that the defendant is the proprietor of a gasoline filling station, and since the allegations of fact in the indictment are taken as true, for present purposes, it is clear that he has been guilty of a deliberate effort to frustrate the government in the discharge of its complex and exacting duties in the supervision of the domestic economy of a country engaged in a war of survival.

If there were any latitude permissible in the examination and consideration of these legal questions, it must be evident that the defendant is not in a position to invoke it.

The presently material provisions of the statute follow:

"§ 72. (Criminal Code, section 28.) *Making, forging, counterfeiting, or altering bonds, bids, or public records; transmitting such papers.* Whoever shall \* \* \* counterfeit \* \* \* any bond, bid, proposal, contract, guarantee, security, official bond, public record, affidavit, or other writing for the purpose of defrauding the United States; or shall utter or publish as true \* \* \* or have in his possession with the intent to utter or publish as true, any such false, \* \* \* or counterfeited \* \* \* public record, affidavit, or other writing, for the purpose of defrauding the United States, knowing the same to be false, \* \* \* or counterfeited; \* \* \* shall be fined not more than $1,000, or imprisoned not more than ten years, or both."

It is not charged that the defendant did the actual counterfeiting.

The defendant urges that the United States has not been defrauded because (as stated in the brief) "The Government had no interest in this gasoline, financial or otherwise."

Presumably this means that the government had no interest in the distribution of gasoline to consumers, pursuant to the regulations attending the ration system, but was interested only in gasoline required for governmental uses.

To that I cannot agree. See United States v. Goldsmith, 68 F.2d 5, 7, in which the Second Circuit Court of Appeals said: "It is true that the acts complained of (the issuance of a false receipt for payment of taxes) could not defraud the United States

in the sense of resulting in a pecuniary loss to it. No money belonging to the United States was taken from it, nor was it deprived of the right to collect the tax which was due. But it is clearly established that, to defraud the United States, pecuniary loss is not necessary; any impairment of the administration of its governmental functions will suffice. (Citing cases.)"

█ Unless this court were prepared to hold that the supervision of the distribution to consumers of gasoline, while the nation is at war, is not a governmental function, it must be clear that anything which tends to defeat or frustrate that distribution does defraud the United States to the extent that the administration of the Act of June 28, 1940, 54 Stat. 676, 677, and the Act of March 27, 1942, 56 Stat. 176, 50 U.S.C.A. Appendix § 633, is impaired. The Office of Price Administration, the governmental agency charged with the duty of supervising this branch of governmental activities involved in the prosecution of the war, derives its authority from those statutes.

Recurring to so much of the defendant's argument as asserts that the gasoline ration coupons in question were not public records or writings within the purview of the statute, a partially successful effort has been made by the court to ascertain what genuine ration coupons are, in order to contrast them with what the indictment refers to as counterfeits; the effort has brought to light that, under date of October 1, 1942, the Office of Price Administration in Washington presented requisitions to the public printer for ration coupon books T–1 and T–2, each requisition containing the following:

"Authorized by (cite law) ———" the required citation not being given.

It likewise appears that the United States Government printing office thereafter and under dates of November 2 and 8, 1942, took appropriate action to comply with the aforesaid requisitions.

█ So much is deemed to establish, then, that the gasoline ration coupons of the "T" Unit referred to in the indictment were documents presumably authorized and issued pursuant to law; once issued, they partook of the character of "other writing", the possession of counterfeits of which with knowledge of their spurious or counterfeit character, and the passing thereof with like knowledge, constituted an offense within the statute under which the indictment is laid.

It was plausibly argued that the defendant could have been prosecuted as for a misdemeanor under the terms of the Second War Powers Act of March 27, 1942, 56 Stat. 176, Title 50 U.S.C.A.Appendix § 633, Sec. 2(a) (5), reading:

"(5) Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both."

It is proper to assume that the foregoing prescribes a penalty which might apply to the possession and passing of counterfeit gasoline ration coupons, and therefore that the defendant might have been prosecuted under the quoted section. The fact is that he has been charged with a different offense, as has been stated, and it seems to be no answer to that charge, that he might also have been prosecuted for some other violation of the law; in other words, because he may have been guilty of violating regulations duly adopted in conformity with the provisions of the Second War Powers Act, it does not follow that he may not be prosecuted for an alleged violation of the statute referred to in this indictment.

It is also urged for the defendant, that if the indictment is sufficient to allege a crime in connection with the possession and passing of counterfeit gasoline ration coupons, it would not have been necessary for Congress to enact laws concerning the counterfeiting of obligations of the United States, and particularly the provisions of Title 18 U.S.C.A. § 348, having to do with the counterfeiting of postage stamps.

Apparently this argument means that Congress did not regard stamps as "other writing" within the language of Title 18 U.S.C.A. § 72. The latter statute is said, in the historical note, to have been drawn from the Act of April 5, 1866, while § 348 is said to have been drawn from the Act of June 8, 1872, and it is to be observed that the penalties in that case are a fine of not more than $500 or imprisonment of not more than five years or both, while the penalty for violation of the earlier section involved a fine of $1,000 or imprisonment for ten years. It is possible to argue that the congressional purpose was to fix a lower penalty for the counterfeiting of postage stamps than for "other writing", which does not prove that gasoline ration coupons do not fall within the latter category.

Decisions interpreting or defining the meaning of the expression "other writing" are few and do not greatly illuminate this question of construction; these words themselves follow "bond, bid, proposal, contract, guarantee, security, official bond, public record, affidavit". Surely that is a comprehensive category of documents, and the words "or other writing" would seem to have been added to designate any other instrument not previously named; and the statute itself seems to contemplate any instrumentality, in the form of a writing, which is used for the purpose of defrauding the United States; the legislative preoccupation was with a result, rather than with the means whereby it might be accomplished.

If that is the correct understanding of the law as written, it follows that gasoline ration coupons which are printed according to competent governmental procedure, if counterfeited and if the imitations are possessed or uttered with the knowledge of their counterfeit character *for the purpose of defrauding the government,* may be the basis of instrumentalities of wrong-doing so as to fall within the inhibition of the statute.

The most recent decision which I have been able to find on the subject is Johnson v. Warden, 9 Cir., 134 F.2d 166, which arose upon habeas corpus proceedings in which the writ was held to have been properly dismissed where it appeared that a forged physician's prescription for narcotics would fall within the meaning of "other writing" as used in this statute. The reasoning in that case seems to accord with the present holding, namely, that the object of the statute was to prevent the defrauding of the United States, and the means of accomplishing that purpose could be such a writing as the prescription in question. Apparently in that indictment there was no allegation that the prescription was "a writing of the United States", which is the averment of the pleading challenged here.

I think that gasoline ration coupons do not have to be writings of the United States in order that the offense here charged may be made out, but that they constitute "other writing" within the meaning and purpose of Title 18 U.S.C.A. § 72.

Once it can be made to appear that there is such a thing as a genuine writing which could be counterfeited or simulated, and that the imitation is shown to have been possessed, or passed with knowledge of the spurious character thereof by the defendant, a violation of this law must be deemed to have been alleged. The descriptive words "of the United States" in this indictment can be treated as surplusage, since they could not have left the defendant in doubt concerning the true nature of the charge made against him.

Demurrer overruled.

Settle order.